**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT FRANKFORT**

CIVIL ACTION NO. 3:21-cv-052 (WOB)

DANA SIMMONS                                                      PLAINTIFF

VS.                          <u>MEMORANDUM OPINION ORDER</u>

ANDREW BESHEAR, ET AL.                                     DEFENDANTS

This is an action filed by Dana Simmons, a former employee of the Commonwealth, against Governor Andy Beshear and other state officials for violations of her Fourteenth Amendment substantive and procedural due process rights stemming from a policy that all executive branch employees wear a mask while at work. Currently pending before the Court are Defendants' motion to dismiss, (Doc. 38), Plaintiff's motion for jury trial, (Doc. 35), Defendants' motion to strike, (Doc. 37), Plaintiff's motion to strike, (Doc. 41), and Plaintiff's motion to vacate, (Doc. 43). After careful consideration, the Court concludes that oral argument is unnecessary, and it issues the following Memorandum Opinion and Order.

### *FACTUAL AND PROCEDURAL BACKGROUND*

On March 6, 2020, Governor Andy Beshear declared a state of emergency in the Commonwealth of Kentucky in response to the COVID-19 pandemic. (Doc. 33-1 at 1-3). Throughout the course of the pandemic, the Governor issued various executive orders meant

to curb the spread of COVID-19. (*See* Doc. 33 at ¶ 14). These executive orders, among other things, mandated the closing of non-essential business and schools and the wearing of face masks in public areas. (*Id.*). Pursuant to the executive orders, the Governor's designees also issued orders that set minimum requirements for businesses and other community entities to help the citizens of Kentucky stay safe for the duration of the pandemic. (*Id.*).

On May 11, 2020, the Secretary for Health and Family Services, Eric Friedlander, signed an order establishing the "Healthy at Work" program, which set the minimum requirements for the reopening of businesses. (Doc. 33-1 at 5-11). The Healthy at Work program mandated that "businesses, organizations, and entities must ensure, to the greatest extent practicable, that their employees, volunteers, and contractors wear a cloth mask." *(Id.* at 7).

Throughout 2020, there were various challenges to the Governor's executive orders. However, in November of 2020, the Kentucky Supreme Court held that the Governor was properly exercising the power that had been delegated to him by the Kentucky General Assembly under KRS Chapter 39A. *Beshear v. Acree*, 615 S.W.3d 780, 813 (Ky. 2020). The Court cautioned, however, that the General Assembly had the authority to revoke that power if it deemed fit. *Id.*

2

In January 2021, during its Regular Session, the General
Assembly responded to *Acree* by passing Senate Bill 1 and House
Joint Resolution 77. Senate Bill 1 amended KRS Chapter 39A and
restricted the Governor's emergency powers. First, it prohibited
the Governor from declaring a state of emergency based "upon the
same or substantially similar facts and circumstances as the
original declaration or implementation without the prior approval
of the General Assembly." 2021 Ky. Acts ch. 6 (SB 1) § 2(3).
Second, it prohibited any executive order, administrative
regulation, or other directive that restricted in-person
activities from lasting longer than thirty days unless the General
Assembly passed an extension. *Id.* at § 2(2). The General Assembly
also passed House Joint Resolution 77, which declared an end to
the state of emergency. 2021 Ky. Acts ch. 168 (HJR 77). Both
House Joint Resolution 77 and Senate Bill 1 were enacted over the
Governor's veto.

The General Assembly's restriction of the Governor's
emergency powers triggered a new round of challenges in Kentucky
state courts. The Franklin County Circuit Court issued a state-
wide temporary restraining order, finding that the laws likely
violated the Kentucky Constitution. *Beshear v. Osborne, et al.*,
No. 21-CI-89 (Franklin Cty. Apr. 7, 2021). The Boone County
Circuit Court, on the other hand, upheld the laws finding that
they were a valid exercise of the General Assembly's delegation

3

powers. *Ridgeway, et al. v. Beshear*, No. 20-CI-678, slip op.
(Boone Cty. June 15, 2021). Eventually, the issue made its way to
the Kentucky Supreme Court, which ruled on August 21, 2021 that
the laws were constitutional and therefore, the Governor's powers
pursuant to KRS Chapter 39A were appropriately limited by the
General Assembly. *Cameron v. Beshear*, 628 S.W.3d 61, 78
(Ky. 2021).

To solidify this holding, on September 7, 2021, the General
Assembly passed Joint Resolution 1, which provided that "all SARS-
COV-2-related orders issued by the Governor and all executive
actions and administrative orders . . . are of no further force or
effect . . . ." 2021 Ky. Act ch. 1 (HJR 1). In the recitals, the
General Assembly highlighted that this was being enacted to clarify
the Governor's emergency powers. *Id*. The Resolution specifically
exempted Personnel Cabinet Memorandum No. 21-14, which aimed to
incentivize executive branch employees to receive their COVID-19
vaccine. *Id.* at § 3. The Memorandum referenced the Commonwealth's
continued implementation of the "Healthy at Work" initiative to
"ensur[e] the health and safety of [] state employees." Personnel
Cabinet Memorandum No. 21-14 (Aug. 5, 2021).

Dana Simmons ("Plaintiff") was an executive branch classified
employee with the Commonwealth of Kentucky Public Protection
Cabinet, Office of Legal Services where she served as a Staff
Attorney II. (Doc. 33 at ¶ 2). She began work on September 16,

4

2020 and worked remotely five days a week because of the COVID-19 pandemic. (*Id.* at ¶ 29). In July of 2021, her position moved to a hybrid work model, where Plaintiff worked in-person some days and remotely on other days. (*Id.*). At the time she moved to a hybrid work model, face masks were not required in the office.

On July 29, 2021, Defendant and Personnel Secretary, Gerina Weathers, disseminated to all executive branch employees a face covering policy. (Doc. 33-1 at 54–55). The policy required that individuals in executive branch buildings wear a face covering while in common areas. (*Id.* at 55). Employees were free to remove their face coverings while at their workstations. (*Id.*). It is unclear from the record whether Plaintiff was initially compliant with the policy or if she was always noncompliant. But regardless, at some point during the summer or early fall of 2021, Plaintiff decided not to comply with the face covering policy.

Plaintiff's noncompliance prompted the Deputy Commissioner to approach her on September 21, 2021 and remind her that she needed to wear a mask while in common areas. (Doc. 33 at ¶ 31). Following this interaction, Plaintiff emailed her direct supervisor and explained that she believed it was her prerogative to choose to wear a mask or not. (*Id.* at ¶ 32). Her supervisor responded to her emphasizing that he was "thankful for the good work" Plaintiff did and explained that the policy was permissible despite the Kentucky Supreme Court's decision in *Cameron v. Beshear* because

5

the policy only applied to executive branch employees.  (Doc. 33-1 at 73-74).  Plaintiff continued to be noncompliant with the face covering policy.

A few days later, Plaintiff had a meeting with the General Counsel of the Public Protection Cabinet, Ben Long.  (Doc. 33 at ¶ 33).  At the meeting, Mr. Long provided Plaintiff with a copy of the face covering policy and an appeals form, and he told her that she would not be permitted to work on days she was scheduled to work in the office if she chose not to wear a face covering. (*Id.*).  A few hours after the meeting, Plaintiff received an email from Mr. Long, explaining for the first time that she would not be permitted to use leave time on the days she was scheduled to work in the office.  (*Id.* at ¶ 34).  The email further stated that "Any absence on those days due to non-compliance [sic] with cabinet policy may result in corrective or disciplinary action . . . ." (*Id.*).

Plaintiff was scheduled to work in the office on September 29, 2021.  (*Id.* at ¶ 35).  She arrived at her desk without a face covering and logged on to her computer to see an email from Mr. Long that was sent the night before, instructing her not to come to work without a face covering.  (*Id.*).  Plaintiff replied that she was already in the building and would not be wearing a face covering.  (*Id.*).  Mr. Long responded and instructed her to leave, which she did.  (*Id.*).  Plaintiff received a written reprimand the

next day from Mr. Raley, the Executive Director of the Office of Administrative Services. (*Id.* at ¶ 36).

Plaintiff again showed up for in-person work on October 1, 2021. (*Id.* at ¶ 37). She waited in the lobby and emailed Mr. Long that she was there to work but would not enter the building without permission. (*Id.*). Plaintiff did not receive a response and left the premises. Mr. Raley emailed her later in the day and said that she may only enter the building if she wore a face covering. (*Id.*). She did not work that day. (*Id.*).

On October 5, 2021, Plaintiff received an email from Mr. Raley suspending her without pay for the next three days for her refusal to comply with the policy. (*Id.* at ¶ 38). After her suspension, she continued with her telecommuting schedule and took approved vacation from October 13, 2021 until October 15, 2021. (*Id.* at ¶ 39). Plaintiff resumed remote work and was on leave without pay again on October 20, 2021. (*Id.*). On November 8, 2021, Plaintiff received an intent to dismiss letter. (*Id.* at ¶ 40). Her pre-termination hearing was held on November 19, 2021 and her termination was effective December 16, 2021.[1] (Doc. 48).

Plaintiff filed this lawsuit on October 22, 2021, alleging violations of her fundamental liberty interests. (Doc. 1). She

---

[1] Plaintiff's supplemental initial disclosures state her termination was effective December 16, 2022. (Doc. 48). Given that such date has yet to occur, and the events referenced in the complaint leading up to her termination all occurred in 2021, the Court concludes that this was a typographical error meant to say December 16, 2021.

requested a preliminary injunction, which this Court denied, finding that there was not sufficient evidence of irreparable harm. (Doc. 12). Plaintiff subsequently filed an appeal with the Sixth Circuit.[2] (Doc. 13). Plaintiff has since amended her complaint. (Doc. 33). Defendants now move the Court to dismiss the case on the grounds of sovereign and qualified immunity, and failure to state a claim. (Doc. 38).

### *ANALYSIS*

To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible upon its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). While the Court construes the complaint in favor of the complaining party, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

### A. Standing to Challenge the Policy

The Court must first address standing. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). The Court

---

[2] "As a general rule, an effective notice of appeal divests the district court of jurisdiction over the matter forming the basis for the appeal." *N.L.R.B. v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 588 (6th Cir. 1987). However, "an appeal from an order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits." *Moltan Co. v. Eagle-Picher Indus., Inc.,* 55 F.3d 1171, 1174 (6th Cir. 1995).

assesses the following three elements in determining whether a party has constitutional standing: (1) whether the plaintiff has alleged an "injury in fact," (2) that is traceable to the challenged action of the defendant, and (3) can be redressed by the court. *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (citing *Lujan*, 504 U.S. at 560-61).

When an injury has not yet occurred, a plaintiff must plead that the injury is certainly impending or there is a substantial risk the harm will occur. *Id.* "The plaintiff must show that [s]he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (internal quotations omitted). Broad and speculative allegations are not sufficient; the plaintiff must allege concrete plans to show future injury. *See Lujan*, 504 U.S. at 579 (Kennedy, J., concurring in-part) (noting that the purchase of a plane ticket would be sufficient to show future harm).

Plaintiff challenges the face covering policy in two different ways. First, she alleges that the policy was a violation of her constitutional rights as an employee of the Commonwealth. Second, she alleges that because the policy applied to any visitor of an executive branch building, it was an impermissible executive order under current state law.

Plaintiff has clearly established all three elements as it relates to her as an executive branch employee—the defendants' policies caused her to be placed on unpaid leave. But Plaintiff does not have standing to contest the constitutionality of the policy requiring visitors to wear facemasks in executive branch buildings because she has not alleged an injury in fact. Plaintiff has not alleged her plans to exercise her rights and enter a governmental building without wearing a mask beyond the purview of her job. *See Lyons*, 461 U.S. at 105. Her complaint is devoid of any such allegations of future harm. Therefore, Plaintiff only has standing to challenge the policy as an employee.

### B. Mootness for Prospective Harm

Plaintiff also does not have standing to sue for prospective injunctive or declaratory relief. Plaintiff is no longer an employee of the Commonwealth. "In order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). This exception is simply not applicable based on the facts alleged in the complaint. Because Plaintiff has been terminated, there is no continuing violation of federal law. Instead, Plaintiff's claims for

prospective relief are moot.[3]   *See Thomas v. City of Memphis, Tenn.*, 996 F.3d 318, 330 (6th Cir. 2021) ("Any injunction or order declaring [the defendant's conduct] unconstitutional would amount to exactly the type of advisory opinion that Article III prohibits."); *Hilburn v. Dep't of Corr.*, No. 2:07-cv-06064, 2010 WL 703202, at *6 (D.N.J. Feb. 23, 2010) ("Plaintiff has been fired; he is not at risk of being fired again; he has no standing to seek prospective injunctive relief.").

Additionally, federal courts cannot grant relief against state officials based on state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("It is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). Accordingly, Plaintiff's claims for prospective relief are dismissed for lack of subject matter jurisdiction.

### C. Qualified Immunity for Damages

It is a well-established principle that the Eleventh Amendment bars plaintiffs from suing state officials in their official capacities for retroactive relief unless the state waives immunity. *See Edelman v. Jordan*, 415 U.S. 651, 665 (1974). Kentucky has not waived said immunity with respect to Section 1983

---

[3] Defendants argue that prospective relief is moot because the face covering policy has been rescinded. (Doc. 44 at n.2). However, because it can be enacted again at any time, it is not moot on this basis. *See In Resurrection Sch. v. Hertel*, 11 F.4th 437, 449-54 (6th Cir. 2021).

litigation.  *Sefa v. Kentucky*, 510 F. App'x 435, 437 (6th Cir. 2013).  Thus, Plaintiff's request for damages against Defendants in their official capacities is denied pursuant to Rule 12(b)(1).

However, Plaintiff's claims for damages are still viable against Defendants in their individual capacities.  Defendants, in response, argue that they are entitled to qualified immunity.

Qualified immunity protects government officials from lawsuits filed against them in their individual capacities unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time."  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).  The unconstitutionality of the alleged action must be "beyond debate" when the official acted, so much so that any reasonable person would know they violated a right.  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).  "When the qualified immunity defense is raised at the pleading stage, the court must determine only whether the complaint adequately alleges the commission of acts that violated clearly established law." *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

### i. Substantive Due Process

Simmons's first claim is for violation of her substantive due process rights.  Substantive due process affords individuals with protection against arbitrary governmental action, including "the exercise of power without any reasonable justification in the

12

service of a legitimate governmental objective." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Courts have likened violations of substantive due process to that of arbitrary and capricious exercise of state power. The state action "will withstand [a] substantive due process attack unless it is not supportable on any rational basis or is willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992) (internal quotation marks omitted).

In the instant case, Simmons argues that the face covering policy enacted by the Personnel Secretary was unlawful and not within her powers, and the imposition of this requirement on her as a government employee was contrary to clearly established law. In simpler terms, she argues that she was subjected to an unlawful policy. To show that it was clearly established that the policy was impermissible, she cites to legislation passed by the General Assembly which revoked the Governor's emergency powers—a revocation later upheld by the Kentucky Supreme Court.

The Court has discretion as to which of the two issues in a qualified immunity analysis to address first—whether the plaintiff has pled a constitutional violation or whether the law was clearly established. *Hearring v. Sliwowski*, 712 F.3d 275, 279 (6th Cir.

13

2013). In this case, "it is plain that a constitutional right [was] not clearly established but far from obvious whether in fact there is such a right," so the Court begins its analysis there. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

For a right to be clearly established, "[t]he contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Id.* (internal citations omitted).

In 2020, there was a series of lawsuits disputing the constitutionality of Governor Beshear's declaration of a state of emergency and his subsequent executive orders relating to COVID-19. The Kentucky Supreme Court held that the Governor's exercise of emergency powers was constitutional. *Beshear v. Acree*, 615 S.W.3d 780, 813 (Ky. 2020). The Court explained that the General Assembly delegated to the Governor the power to declare a state of emergency and issue executive orders under KRS Chapter 39A. Therefore, the Governor's declaration of a state of emergency and his designees' subsequent issuance of executive orders in response to the COVID-19 was proper. However, the Court cautioned

14

that this power was not absolute, writing, "there is nothing wrong with this [delegation of authority] so long as the delegating authority retains the right to revoke the power."  *Id.* at 810 (quoting *Commonwealth v. Assoc. Indus. of Ky.*, 370 S.W.2d 584, 588 (Ky. 1963)).

In early 2021, the General Assembly did just that.  The General Assembly declared an end to the state of emergency and limited the Governor's ability to issue new executive orders relating to COVID-19 restrictions.  In simpler terms, the General Assembly took back the emergency powers it had delegated to the Governor.

After conflicting circuit court orders about the constitutionality of the General Assembly's actions, the Kentucky Supreme Court upheld the General Assembly's revocation of the Governor's emergency powers pursuant to KRS Chapter 39A.  *Cameron v. Beshear*, 628 S.W.3d 61 (Ky. 2021).  Specifically, the Court wrote, "the Governor's emergency powers derive from the statutes enacted by the General Assembly, not from [Kentucky's] Constitution and not from his 'inherent' powers."  628 S.W.3d at 78; *see also Oswald v. Beshear*, 555 F. Supp. 3d 475, 478 (E.D. Ky. Aug. 19, 2021) ("The executive branch cannot simply ignore laws passed by the duly-elected representatives of the citizens of the Commonwealth of Kentucky.").  In other words, the Kentucky Supreme

15

Court held that the Legislature's revocation of emergency powers was properly executed and must be enforced.

Simmons reads the opinion in *Cameron v. Beshear* very broadly when it is deliberately narrow.  She argues that the Kentucky Supreme Court opinion holds that all mask mandates are now deemed unconstitutional.  But *Cameron v. Beshear* is limited to the powers delegated to the Governor under KRS Chapter 39A.  The statute delegates to the Governor and the Division of Emergency Management the power to act "to protect life and property of the people of the Commonwealth, and to protect public peace, health, safety, and welfare . . . and in order to ensure the continuity and effectiveness of government in time of emergency, disaster, or catastrophe."  Notably absent from KRS Chapter 39A is discussion of how the Governor should run his own executive branch.  Indeed, the language of KRS Chapter 39A specifically refers to how the Governor may act to protect and help the "people of the Commonwealth."

Rather, the administration of executive branch employees is controlled by KRS Chapter 18A.  The General Assembly enacted KRS Chapter 18A, which establishes "a system of personnel administration . . . governing the recruitment, examination, appointment, promotion, transfer, lay-off, removal, discipline, and welfare of its classified employees and other incidents of state employment."  Defendants argue that the face covering policy

16

was enacted pursuant to their authority under KRS Chapter 18A.030. (Doc. 38-1 at 10). Under KRS Chapter 18A.030(i) specifically, the Personnel Secretary has the duty to "prepare, in cooperation with appointing authorities and others, programs for employee training, safety, morale, work motivation, health, counseling, and welfare . . . ." The Governor appoints and oversees the Personnel Secretary. The General Assembly has not abrogated any of the powers delegated to the executive branch under KRS Chapter 18A throughout the COVID-19 pandemic.

Government officials benefit from qualified immunity in Section 1983 cases when they followed a reasonable interpretation of the law that is "assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson*, 483 U.S. at 639. Here, the General Assembly delegated discretionary authority to the Personnel Secretary to create internal "programs" designed to promote the health and safety of executive branch employees. The General Assembly did not define the term "program," nor did it outline methods of enforcement. The scope of the Personnel Secretary's discretionary authority was broad and had gone uncontested up until this point. Similarly, the scope of the Public Protection Cabinet Secretary's authority to dictate how to enforce this policy was similarly broad and discretionary.

At the time Plaintiff was disciplined for her noncompliance with the face covering policy, the Kentucky Supreme Court had only

17

ruled on the Governor's powers under KRS Chapter 39A.  It had not
addressed the authority the Governor and his designees had pursuant
to KRS Chapter 18A to enact a face covering policy in executive
branch buildings.  It can hardly be said that enacting the face
covering policy was an unreasonable interpretation of the
authority vested to the Personnel Secretary by the General
Assembly.  Nor can it be said that Joint Resolution 1 clearly
prohibited the Personnel Secretary from promulgating internal
policies directed at promoting executive branch employees' health
and wellness.  The language of the resolution is not that
comprehensive.  Further, there is no evidence that the policy was
disseminated with any bad faith.

The contours of the Personnel Secretary's powers were not
clearly defined at the time Simmons was reprimanded for failing to
comply with the face covering policy.  Therefore, the three
defendants, in their individual capacities, are entitled to
qualified immunity for the damages Simmons seeks. "Qualified
immunity is immunity from suit, and not merely liability." *Skousen
v. Brighton High Sch.*, 305 F.3d 520, 525 (6th Cir. 2002).

This Court ultimately declines to rule on the
constitutionality of the face covering policy under KRS Chapter
18A because the contours of that law are "more appropriately
addressed by Kentucky state courts." *Scheweder v. Beshear*, 3:21-
cv-19, 2021 WL 5150603, at *4 (E.D. Ky. Nov. 11, 2021).  The

18

constitutional-interpretation question has "no effect on the outcome of the case," and thus, the Court need not resolve it. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Accordingly, all three Defendants are entitled to qualified immunity for Plaintiff's substantive due process claim.

### ii. Procedural Due Process

Plaintiff also pleads a violation to her procedural due process rights. In general, "procedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests." *Pittman v. Cuyahoga Cty. Dep't of Children and Family Servs.*, 640 F.3d 716, 729 (6th Cir. 2011). Plaintiff must show (1) that she has been deprived of a cognizable liberty interest, and (2) that such deprivation occurred without adequate procedural protections. *Id.* The alleged deprivation must have been the result of more than a "lack of due care." *Daniels v. Williams*, 474 U.S. 327, 333 (1986). Instead, the "conduct must be grossly negligent, deliberately indifferent, or intentional." *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996).

The Court notes it is difficult to ascertain the exact nature of Plaintiff's procedural due process claim. She does not plead any procedural due process violations regarding her discipline or termination. On the contrary, she has attached exhibits to her amended complaint showing that she had the opportunity to appeal

19

the disciplinary actions taken against her and have a pre-termination hearing before her termination took effect. (Doc. 33 at ¶ 33; Doc. 33-1 at 93-94). But generally, Simmons takes issue with the fact that the face covering policy was a regulation that did not go through the proper notice and comment procedures. She also claims her reputation was harmed by the disciplinary measures taken by her supervisors. None of these, however, amount to a deprivation of her liberty interests.

As discussed in greater length above, the face covering policy was promulgated as a "program" by the Personnel Secretary. The term "program" indicates that the face covering policy is an internal policy that does not require the promulgation of formal rules that are subject to a notice and comment period. *See* KRS § 13A.010(2)(a) (exempting from notice and comment "statements concerning only the internal management of an administrative body and not affecting private rights or procedures available to the public."). Further, the policy does not contradict KRS Chapter 13A.130, which provides specific examples of when internal policies or memorandums are prohibited. *See also Vestal v. Motley*, 2007 Ky. App. LEXIS 286 (Ky. Ct. App.) (holding that an internal memorandum mandating the canteen of receipts for 60 days was reasonably related to goals outlined by statute and did not violate administrative law). Accordingly, the fact that this face covering

20

policy did not go through notice and comment does not amount to a procedural due process violation.

Plaintiff also refers to her damaged reputation in her complaint, arguing that her once clean personnel record is now tarnished, making it difficult for her to find employment. (Doc. 33 at ¶¶ 12, 43, 46). A "person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the [F]ourteenth [A]mendment." *Quinn v. Shirley*, 293 F.3d 315, 319 (6th Cir. 2002).

To establish that Defendants' actions amounted to a procedural due process violation, Simmons must show that Defendants made false and stigmatizing statements in conjunction with her discipline and that these statements were made public. *Id.* at 320 (citing *Brown v. City of Niota*, 214 F.3d 718, 722–23 (6th Cir. 2000)). Once a plaintiff has established these elements, she "is entitled to a name-clearing hearing if [she] requests one." *Brown*, 214 F.3d at 723. "It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process." *Quinn*, 293 F.3d at 320.

Plaintiff's complaint is completely lacking factual allegations connected to these required elements. Although Simmons complains that her disciplinary record has made it difficult to find subsequent employment, she does not identify any part of her record that she considers false, nor does she allege

21

that any stigmatizing statements were disseminated and made public.  Even more, she does not claim that she requested and was denied a name-clearing hearing.  Therefore, she has failed to sufficiently plead a procedural due process violation.[4]

### D. Motion to Vacate

Plaintiff has additionally filed a motion to vacate the Court's previous order, (Doc. 36), which deemed Defendants' first motion to dismiss as moot.  She claims this was in error due to the Court's "oversight or mistake."  (Doc. 43 at 4).

---

[4]     Plaintiff only explicitly pleads two claims: substantive due process and procedural due process.  These two claims are squarely addressed above.  However, Plaintiff also claims Defendants violated her Eighth, Ninth, and Tenth Amendment rights, parallel Kentucky Constitutional rights, and that she is entitled to relief pursuant to 42 U.S.C. § 1988.  For purposes of a clear and thorough record, the Court briefly addresses these miscellaneous claims and why they fail.
     First, Plaintiff fails to allege any facts explaining how Defendants' actions violated her Ninth or Tenth Amendment rights.  Therefore, to the extent the Court would construe these as individual claims, they are dismissed pursuant to Rule 12(b)(6) under *Twombly v. Bell Atlantic Corp.*, 550 U.S. 544 (2007).  Second, the Eighth Amendment is inapposite here.  *See Cecil v. Ky. Comm. & Tech. Coll. Sys.*, 2021 WL 4129973, at *6 (E.D. Ky. Sep. 9, 2021) (finding there is no authority to extend Eighth Amendment protections to employment disputes).  Finally, Plaintiff's Section 1988 claim fails because it "requires that a plaintiff receive at least some relief on the merits of [her] claim before [s]he can be said to prevail."  *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 619 (6th Cir. 2007).
     Plaintiff also asserts violations to Sections 1, 2, 17, and 26 of the Kentucky Constitution.  However, she does not identify any state statutory vehicle for vindicating her state constitutional rights.  Section 1983 applies only to deprivations of federal constitutional and statutory rights.  *Neinast v. Bd. of Trs. of Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003).  "There is no analogous state statute or authority that enables [Simmons] to pursue a civil claim for an alleged violation of the Kentucky Constitution."  *Shepherd v. Univ. of Kentucky*, No. 5:16-cv-5, 2016 WL 4059559, at *4 (E.D. Ky. July 28, 2016).  Therefore, to the extent these are construed as separate claims, they fail as a matter of law.

Plaintiff moved for leave to file an amended complaint. (Doc. 21). Although she attached her amended complaint to her motion for leave, Plaintiff's amended complaint was not docketed until the Court granted the motion. (Doc. 31). In between Plaintiff filing her motion for leave and the Court's granting of the motion, Defendants filed their first motion to dismiss. (Doc. 23). However, the amended complaint only became the operative complaint when the Court granted the motion and instructed the Clerk to docket the amended complaint. (Doc. 31). This was not a "second bite at the apple" as Plaintiff contends. It was merely the Court maintaining a clear docket. The Court has broad discretion as to how it manages its docket, and therefore Plaintiff's motion to vacate will be denied. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

More importantly, deeming Defendants' first motion to dismiss moot did not unfairly prejudice Plaintiff. By the time Defendants' first motion to dismiss would have been ripe, Plaintiff was already terminated from her job—meaning she did not lose the right to prospective relief because of the Court's order. Further, the arguments presented in Defendants' original motion to dismiss and subsequent motion to dismiss are substantially similar. The Court's order was not "legally or factually erroneous," and therefore, the Court need not vacate it. *Westport Ins. Corp. v.*

23

*Mudd*, No. 1:08-cv-34-R, 2010 WL 5068140, at *2 (W.D. Ky. Dec. 6, 2010).

Accordingly, for the reasons stated above,

    **IT IS ORDERED:**

1. Defendants' motion to dismiss, (Doc. 38), be, and is hereby **GRANTED.**

2. Plaintiff's motion to vacate, (Doc. 43), be, and is hereby **DENIED.**

3. Plaintiff's motion for jury trial, (Doc. 35), be, and is hereby **DENIED AS MOOT.**

4. Defendants' motion to strike, (Doc. 37), be, and is hereby **DENIED AS MOOT.**

5. Plaintiff's motion to strike, (Doc. 41), be, and is hereby **GRANTED.**

A separate judgment shall enter concurrently herewith.

This 5th day of May 2022.



**Signed By:**

***William O. Bertelsman*** WOB

**United States District Judge**